UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEPH MERCOLA,

    Plaintiff,

v.                                      Case No.:   2:23-cv-545-SPC-KCD

THE NEW YORK TIMES
COMPANY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court are Defendant's Motion to Dismiss (Doc. 28), the Response (Doc. 32), Reply (Doc. 47), and Sur-Reply (Doc. 50), as well as a related Notice of Supplemental Authority (Doc. 48). As it must, the Court treats the factual allegations in the Complaint (Doc. 1) as true and construes them in the light most favorable to Plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). For the reasons below, the Court grants the motion.

This is a defamation action. Plaintiff Dr. Joseph Mercola is an osteopathic physician and business owner. He has written about many health topics, including COVID-19, because he "has both a professional responsibility and a genuine personal commitment to providing accurate health-related commentary to the public." (Doc. 1 ¶ 58). Defendant The New York Times

Company has a different view. It published a report about Plaintiff titled "The Most Influential Spreader of Coronavirus Misinformation Online." The report states that Plaintiff makes unproven and sometimes far-fetched health claims and then sells products online that he promotes as alternative treatments. The report gives examples, stating that Plaintiff once argued tanning beds reduce the chances of getting cancer, while selling tanning beds. After the Federal Trade Commission brought false-advertising claims, Plaintiff settled and sent millions in refunds to customers. The report states that the Food and Drug Administration has issued warning letters to Plaintiff for selling unapproved health products and has fined him millions of dollars. And the report asserts Plaintiff has similarly tried to capitalize off COVID-19. The report challenges several of Plaintiff's claims related to COVID-19 vaccines and notes that Plaintiff began promoting vitamin supplements to defend against the virus, inspiring another FDA warning letter. According to the report, Plaintiff uses his large internet presence to spread misinformation about COVID-19 to grow his brand and sell his products.

Although Plaintiff broadly objects to the report, two statements form the basis of Plaintiff's suit. In statement one, Defendant challenges some of Plaintiff's specific claims about COVID-19 vaccines:

> [Dr. Mercola's article] said the injections did not prevent infections, provide immunity or stop transmission of the disease.

2

> Instead, the article claimed, the shots "alter your genetic coding, turning you into a viral protein factory that has no off-switch."
>
> Its assertions were easily disprovable.

(Doc. 1-1 at 2). Plaintiff alleges that his claims about COVID-19 vaccines are true and argues that, at bottom, they were not "easily disprovable" given the science on this issue is neither settled nor conclusive.

Statement two concerns Defendant's request for comment from Plaintiff before publishing the report. In response to Defendant's request, Plaintiff stated, "I am the lead author of a peer reviewed publication regarding vitamin D and the risk of Covid-19 and I have every right to inform the public by sharing my medical research. https://pubmed.ncbi.nlm.nih.gov/33142828/" (Doc. 1-2 at 3). The link at the end of his statement is the link to his peer-reviewed publication. Despite receiving that link, Defendant included statement two in its report:

> He did not address whether his coronavirus claims were factual. "I am the lead author of a peer reviewed publication regarding vitamin D and the risk of Covid-19 and I have every right to inform the public by sharing my medical research," he said. He did not identify the publication, and The Times was unable to verify his claim.

(Doc. 1-1 at 4). Plaintiff alleges this statement is false—he did identify his publication for Defendant's verification by providing a link—and argues the statement implies he lied about his scholarly work or was so confused he could not identify it.

3

Plaintiff contacted Defendant about the report several times.[1] Defendant then issued a correction acknowledging that Plaintiff did not pay millions of dollars in fines to the FDA, although he did pay millions of dollars in refunds to customers because of a settlement with the FTC. Defendant also updated, without issuing a formal correction, its representation about Plaintiff's pre-publication comment. Defendant acknowledged Plaintiff's peer-reviewed publication, writing that it "was unable to verify the claims in the study, which was published by Nutrients, a monthly journal from Molecular Diversity Preservation International, a nonprofit in Basel, Switzerland." (Doc. 1-3 at 4). Defendant included in its update a link to Plaintiff's publication. Defendant did not correct or update its statement that Plaintiff's COVID-19 claims are "easily disprovable." Unhappy with Defendant's correction, update, and inaction, Plaintiff brought this suit. Defendant moves to dismiss.

To state a claim for defamation under Florida law, a public figure (like Plaintiff) must allege: (1) publication, (2) falsity, (3) malice, (4) actual damages, and (5) a defamatory statement. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). "True statements, statements that are not readily capable of

---

[1] The parties argue whether Plaintiff satisfied the pre-suit notice requirement in Florida Statute § 770.01. Plaintiff did not allege compliance with § 770.01 in his complaint. *See* Fed. R. Civ. P. 9(c) (A plaintiff must "allege generally that all conditions precedent have occurred or been performed."). But amendment on this point would be futile because the Court examines the merits and finds that the challenged statements cannot support a defamation action.

being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). And to be defamatory, a statement must "tend[] to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1109 (Fla. 2008).

The Court starts with statement one—Defendant's report that Plaintiff's vaccine claims are "easily disprovable." Defendant argues that the Court should treat statement one as an opinion because the statement concerns a topic of ongoing scientific debate.

"Statements of different, even conflicting, opinions, about unsettled matters of scientific or medical treatment that are the subject of ongoing public debate and deep public interest, cannot give rise to defamation claims." *Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 564 (S.D. Tex. 2022), *appeal dismissed*, No. 22-20455, 2022 WL 18912180 (5th Cir. Sept. 27, 2022). Afterall, "[w]hatever is added to the field of libel is taken from the field of free debate." *New York Times Co. v. Sullivan*, 376 U.S. 254, 272, 84 S. Ct. 710, 722, 11 L. Ed. 2d 686 (1964). And finding truth in scientific debate requires "[m]ore papers, more discussion, better data, and more satisfactory models—not larger awards of damages[.]" *Underwager v. Salter*, 22 F.3d 730,

5

736 (7th Cir. 1994); *see also Edwards v. Schwartz*, 378 F. Supp. 3d 468, 528 (W.D. Va. 2019) ("determining the falsity of the claim. . . would mire the court in a scientific debate of the sorts courts are loathe to resolve in defamation actions."); *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 497 (2d Cir. 2013) ("[F]or purposes of the First Amendment and the laws relating to fair competition and defamation, [statements about contestable scientific hypotheses] are more closely akin to matters of opinion, and are so understood by the relevant scientific communities.").

The Court strains to find a scientific topic of the day more hotly debated than the efficacy of COVID-19 vaccines. This was especially so in 2021 when Defendant first published the report. As Plaintiff's complaint highlights, his vaccine claims were part of the "emerging science" about a "newly developed" vaccine. (Doc. 1 ¶¶ 15-17).

Courts have dismissed strikingly similar defamation claims brought by doctors against media defendants for labeling their vaccine claims as misinformation. *See Malone v. WP Co., LLC*, No. 3:22-CV-00046, 2023 WL 6447311, at *5 (W.D. Va. Sept. 29, 2023) ("In sum, the Washington Post article at issue takes a side in a public debate over the efficacy of COVID-19 vaccines. . . . The law . . . counsels that the Court decline Plaintiff's invitation to pick winners and losers in a scientific debate, such as that at issue here."); *McCullough v. Gannett, Co.*, No. 122CV1099RDALRV, 2023 WL 3075940, at

6

*7 (E.D. Va. Apr. 25, 2023) ("Both Dr. McCullough and his critics were speaking about topics—the COVID-19 illness, vaccine, and pandemic—that at the time (and to this day) remain the subject of vigorous scientific debate. It is not this Court's job to pick sides in a scientific debate."); *Immanuel*, 618 F. Supp. 3d at 564 ("Dr. Immanuel cannot bring a defamation claim on the basis of CNN's statements of its opinion about Dr. Immanuel's public support of a COVID treatment that many scientists had rejected."); *Arthur v. Offit*, No. CIV.A. 01:09-CV-1398, 2010 WL 883745, at *6 (E.D. Va. Mar. 10, 2010) ("[T]he thorny and extremely contentious debate over the perceived risks of certain vaccines. . . is hardly the sort of issue that would be subject to verification[.]").

Plaintiff argues this defamation action is different. According to Plaintiff, he is not asking the Court to pick a side in a scientific debate (although his complaint asserts that his scientific claims are right and Defendant's report is wrong. (Doc. 1 ¶ 22)). Plaintiff now embraces that the science surrounding COVID-19 vaccines "is neither settled nor conclusive." (Doc. 32 at 6). And given the unsettled nature of the debate, so the argument goes, Defendant's statement that his vaccine claims are "easily disprovable" must be false. They cannot be disproved, says Plaintiff, precisely because the science is murky.

But Plaintiff's litigation position cannot change Defendant's report. When Defendant reports that Plaintiff's claims are easily disprovable it is

7

conveying the message that Plaintiff's claims are wrong. Even if the report also conveys the message that the science is settled, this is only to state that Plaintiff is *really* wrong. Moreover, the assertion that Plaintiff is wrong is what is perhaps defamatory to him (but not actionable)—not the message that the science is settled. Stating merely that science is settled in no way injures Plaintiff's reputation or subjects him to hatred, ridicule, or contempt. So that message cannot serve as the basis of his defamation claim. Defendant's report that Plaintiff's claims are easily disprovable takes a side in a scientific debate. And to resolve Plaintiff's claim about the defamatory nature of this statement, the Court would have to pick a side in that debate. The Court will not.

Next, statement two—Defendant's report that Plaintiff did not identify his publication and that it could not verify his claim. Plaintiff alleges this report is false and argues that it implies he lied about his scholarly work or was so confused he could not identify it. Defendant argues this statement is not defamatory.

A defamatory statement is one that "tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Jews For Jesus*, 997 So. 2d at 1109. Whether a statement is defamatory is a question of law for the Court. *Turner*, 879 F.3d at 1263.

8

Statement two is not defamatory. Defendant's literal report that Plaintiff did not identify his publication and it could not verify his claim does not tend to lower Plaintiff's reputation in the community. It does not expose Plaintiff to hatred, ridicule, or contempt. It does not injure his business. It is at best a minor and immaterial inaccuracy.

Nor is the report reasonably susceptible to another defamatory meaning. Plaintiff alleges that the report could be read to imply that he lies about his scholarly work or was too confused to identify that work. But this unreasonable interpretation invents innuendo. Courts have recognized similar "unable to verify" statements are not accusations, but simply statements that mean what they say. *See Khashan v. State Farm Mut. Auto. Ins. Co.*, No. B290652, 2019 WL 5445199, at *6 (Cal. Ct. App. Oct. 24, 2019) ("[The statement] merely states that Geico was unable to confirm the existence of a valid policy, not that [Plaintiff] actually lacked auto insurance"); *Swanson v. Baker & McKenzie, LLP*, No. 12 C 8290, 2013 WL 1087579, at *7 (N.D. Ill. Mar. 14, 2013), *aff'd*, 527 F. App'x 572 (7th Cir. 2013) ("Even viewing the facts in the light most favorable to Ms. Swanson, Defendants' statements describe their ability to make such a verification, not, as Ms. Swanson would like the Court to believe, whether Ms. Swanson did in fact work at Baker at any time.").

The context surrounding statement two confirms this reading. Defendant provided Plaintiff's pre-publication comment to show his side of the

9

story. Defendant reported on Plaintiff's thought that it was "quite peculiar to [him] that [he is] named as the #1 superspreader of misinformation." Plaintiff didn't understand "how the relatively small number of shares [on some of his social media posts] could possibly cause such calamity to Biden's multibillion dollar vaccination campaign." And he accused the White House of "illegal censorship by colluding with social media companies." Defendant also reported on Plaintiff's statement that he is "the lead author of a peer reviewed publication regarding vitamin D and the risk of Covid-19" and that he has "every right to inform the public by sharing [his] medical research[.]" But then Defendant got one technical point wrong. Defendant reported that Plaintiff did not identify his publication and that it was unable to verify his claim. (Doc. 1-1 at 4). Plaintiff had in fact included a link to his publication in his comment. In a subsequent article update, Defendant named the publishing journal and provided a link to the publication.

      That is all Defendant said about whether Plaintiff had in fact published scholarly work. Defendant did not elaborate on the point. Defendant did not feature the point prominently in its report. Moreover, the rest of Defendant's report is explicit. It does not utilize innuendo. The report explicitly states Plaintiff's vaccine claims are disprovable. (Doc. 1-1 at 2). It explicitly states that Plaintiff is a "chief spreader of coronavirus misinformation online." (*Id.*). And it explicitly states some of Plaintiff's prior articles "were based on

10

discredited studies." (*Id.* at 6).  If Defendant thought that Plaintiff lied about publishing the article, it would have just said so.  It did not.  And reading that meaning into Plaintiff's report would be unreasonable.

Plaintiff alleges that only two statements in Defendant's report defamed him.  The first statement cannot support a defamation claim because entertaining such a claim would entangle the Court in an ongoing scientific debate.  The second statement simply is not defamatory.  Accordingly, the Court finds neither statement is actionable so amendment of the complaint would be futile.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. 28) is **GRANTED** and this action is **DISMISSED with prejudice** for the reasons stated in this Order.

2. The Clerk is **DIRECTED** to deny any pending motions as moot, terminate any deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on February 12, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

11